UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-21580-CIV-GOODMAN

[CONSENT CASE]

APRIL GENTRY,

      Plaintiff,

v.

CARNIVAL CORP, et al.,

      Defendants.

_____/

## ORDER ON MOTIONS TO COMPEL

This matter is before the Court on Plaintiff April Gentry's Motion to Compel Better Responses to Plaintiff's Interrogatories and Request for Production from Defendant Mystic Mountain Limited (DE 39) and Motion to Compel Better Responses to Plaintiff's Interrogatories and Request for Production from Defendant Carnival Corporation (DE 40).

By way of general background, Gentry alleges that she was injured while participating in an excursion in Jamaica, a scheduled port-of-call on one of Carnival's commercial cruises. The excursion was a bobsled ride operated by Mystic. Gentry initially alleged that she was injured due to seat belt failure but is now also exploring other potential causation theories for her injury, such as brake failure or the wetness of the track.

In a previous order, the Court dismissed Gentry's breach of contract claim against Carnival but permitted the case to proceed on Gentry's remaining claims. *See Gentry v.*

*Carnival Corp*, No. 11-21580, 2011 U.S. Dist. LEXIS 114841 (S.D. Fla. Oct. 5, 2011). These claims include a negligence and joint venture claim against both defendants and an agency claim against Carnival.

The Court carefully reviewed and considered the motions, the defendants' responses, and the pertinent portions of the record, including various supplemental filings and notices. The Court also held oral argument on April 23, 2012. The motions are hereby GRANTED IN PART and DENIED IN PART as outlined below. **All supplemental answers and productions ordered herein shall be made within fourteen (14) days.**

**1.** **Discovery Related to Establishing Profit/Loss Sharing** (Mystic Interrogatory 14 & Request for Production 7, 8, 22, 23; Carnival Interrogatory 14 & Request for Production 7, 8, 22, 23).

Gentry first requests that Mystic and Carnival provide information on the amount charged per passenger for each shore excursion and the amount that Carnival pays Mystic. Gentry argues that this information is relevant to her joint venture claim. Mystic and Carnival provided to Plaintiff the contract that governs their relationship but redacted the amounts paid by Carnival to Mystic per passenger. Mystic and Carnival object that this information is not relevant because the contract itself establishes the lack of a joint venture and because the pricing of the excursions is a trade secret and constitutes sensitive proprietary information that is closely guarded in the industry.

Defendants' relevancy objection is overruled. The Court finds that the prices are within the broad scope of discovery. *See* Fed. R. Civ. P. 26(b)(1). Defendants should save this argument for a summary judgment motion.

Defendants' trade secret objection is also overruled.  "A party seeking to shield its trade secrets or other commercial information must establish that the information to be protected is a trade secret, that it is confidential, and that its disclosure might be harmful." *Estridge v. Target Corp.*, No. 11-61490, 2012 U.S. Dist. LEXIS 21593, at *19 (S.D. Fla. Feb. 16, 2012).  "The burden then shifts to the party seeking disclosure to establish that the trade secret or confidential information sought is relevant and necessary to the action." *Id.*  The Defendants have not made a sufficient showing that the information should be protected as a trade secret.  But to allay Defendants' concern, this information shall be provided pursuant to a confidentiality order that provides for "attorneys' eyes only."

**Mystic shall answer interrogatory 14 and provide the unredacted contracts in response to requests 7 and 8.  All of this information will be subject to a confidentiality order with an "attorneys' eyes only" provision.  The parties shall submit an appropriate proposed confidentiality order <u>within seven days.</u>**

Gentry also requests that Defendants provide any and all records reflecting the collection of money from Carnival passengers for excursion tickets as well as any and all records reflecting payment from Carnival to Mystic.  Defendants object that this request is unduly burdensome.  Gentry clarified that she is only interested in the dollar amounts and what happens if an excursion is cancelled.  But the Court has already ordered Defendants to provide the dollar amounts and Gentry will be able to find out what happens when an excursion is cancelled during an appropriate Rule 30(b)(6) deposition. **Defendants' objections to requests 22 and 23 are sustained.**

**2.** **Incident Reports, Witness Statements and Post-Accident Emails**
(Mystic Request for Production 13, 14, 15, 24; Carnival Request for
Production 13, 15, 24).

Gentry next seeks production of any incident reports, witness statements, and correspondence between Carnival and Mystic about the incident. Mystic has identified three documents that are responsive to this request but objects to their disclosure based on the work product privilege. Carnival also asserts the work product protection as well as the joint defense doctrine, because Mystic provided the relevant documents to Carnival in anticipation of litigation and Defendants have a common interest in the joint defense of this case. Gentry contests the applicability of the work product privilege, argues that the joint defense doctrine is applicable only to the attorney-client privilege, and further asserts that she can overcome the qualified privilege for work-product, if necessary. Mystic filed the three documents at issue under seal to permit an *in camera* review. The Court reviewed the documents *in camera*.

Federal Rule of Civil Procedure 26(b) provides, in relevant part,

**(3)** *Trial Preparation: Materials.*

**(A)** *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

**(i)** they are otherwise discoverable under Rule 26(b)(1); and

**(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

"The work product doctrine is distinct from and broader than the attorney-client privilege, and it protects materials prepared by the attorney, whether or not disclosed to

the client, as well as materials prepared by agents for the attorney." *Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 653 (S.D. Fla. 2009). "The party asserting work product privilege has the burden of showing the applicability of the doctrine." *Grand Jury Proceedings v. United States*, 156 F.3d 1038, 1042 (10th Cir. 1998). The burden then shifts to the proponent of the discovery, who "must show both substantial need and undue hardship." *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir. 1984). The critical consideration in evaluating a claim for work product material is whether "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981).

Mystic's general counsel Michael Drakulich provided a declaration in support of Mystic's work product claim. Drakulich states that, **at his direction**, witness statements and incident reports are compiled after any incident involving personal injury to aid Mystic in the event of litigation:

> 6.      Based on the knowledge and experience I have accumulated as an attorney and as the General Manager and General Counsel of Mystic, a business that contracts with several entities that include cruise lines, guests that allege injury while visiting the premises of tour operators, particularly cruise passengers, initiate claims seeking compensation for said injuries. Often times, these claims develop into lawsuits.

> 7.      Accordingly, I developed a policy that Mystic is to investigate all allegations involving guest injuries in order to prepare for claims and/or litigation that may ensue as a result. As part of this policy, Mystic requires the preparation of incident reports and taking of witness statements following any incident involving personal injury. The primary purpose of these investigative documents is to aid in the event of a claim and/or litigation. Mystic employees are instructed to include interviews with the injured guest, witnesses, employees with knowledge of the incident, and to the extent applicable, a discussion of the cause of the incident and ways to prevent future incidents. All incident reports are prepared at my direction and for my review and evaluation as General Counsel. Upon review of each incident report, I may contribute to the same in furtherance for the preparation of Mystic's defenses in the event of a claim or lawsuit.

5

8.      Mystic prepares incident reports regardless of whether the guest/potential claimant is a passenger of any of the several cruise lines Mystic contracts with or a guest that purchased tickets directly from Mystic.

9.      In the event the injured guest is a Carnival passenger, Mystic provides incident reports to Carnival Corporation, which requests copies of incident reports following every incident involving a guest injury. Upon information and belief, Carnival makes these requests as part of its investigation in anticipation and preparation of litigation.

10.     Based on my experience and knowledge concerning the shore excursion industry, cruise passengers that initiate claims and/or lawsuits following personal injury generally do so against both the tour operator and cruise line. Accordingly, Mystic will exchange correspondence with Carnival regarding incidents involving personal injury in a concerted effort to prepare for the eventuality of a claim and/or lawsuit.

Based on this declaration and the *in camera* review, the Court finds that Mystic has met its burden to show that the first two documents at issue constitute work-product.[1] These documents were prepared by agents of Mystic's counsel primarily in anticipation of litigation.[2]

With respect to the final document, which consists of seven emails, the Court finds that only the first email, which was sent on July 26, 2010 at 9:58 a.m., is covered by

---

[1]     These two documents are identified as "Incident Report" and "Incident Report/Statement" on Mystic's privilege log.

[2]     *Bridgewater v. Carnival Corp.*, No 10-22241, 2011 WL 4383312 (S.D. Fla. Sept. 20, 2011), and *Jones v. Carnival Corp.*, No. 04-20407, (S.D. Fla. Sept. 27, 2005) (order overruling objection to Magistrate), the two cases that Gentry primarily relies on to attack Mystic's work product claim, do not foreclose the result here. The affidavits submitted in those cases were substantially weaker than the showing that Mystic has made on this motion. Unlike here, Carnival did not submit an affidavit from counsel in either *Bridgewater* or *Jones* stating that the relevant documents were prepared at his direction to aid in anticipation of litigation. In *Jones*, Judge Jordan specifically noted that the accident report was not prepared at the direction of an attorney or insurer. And in *Bridgewater*, the defendant did not submit an affidavit from an attorney indicating that the incident reports were prepared as a result of procedures implemented at his direction in anticipation of possible litigation.

the work product privilege.  The remaining emails were not prepared primarily to aid in possible future litigation and must be produced.

Turning to whether Gentry can overcome the qualified work product protection, the Court concludes that she cannot, at least on the record presented to the Court.  First, discovery is ongoing and Gentry has yet to take several key depositions in this case. Accordingly, at this time Gentry has failed to carry her burden to show undue hardship.

Moreover, Gentry cannot show a substantial need for these documents.  Counsel often assume that when opponents withhold documents upon a claim of privilege, that they do so because they are in fact sitting on a smoking gun.  Consequently, counsel propounding discovery often suspect automatically that the opponent is asserting the work product doctrine because the adversary is trying to hide significant, adverse evidence.[3]

But based on its *in camera* review, the Court can report that this is not the case here.  In fact, despite all the argument on this issue, these documents are not particularly helpful to proving Gentry's allegations.  To the contrary, the two incident reports and one email are comparatively innocuous documents which simply report the basic information about the incident -- information which Gentry either already knows or will likely soon know based on deposition testimony obtained during discovery.

---

[3]     For a musical reference to this attitude, see "Suspicious Minds," a song sung by Elvis Presley.  Recorded at American Sound Studios in Memphis, the song was written by Mark James and reached the #1 position on the U.S. music charts on November 1, 1969.  http://oldies.about.com/od/elvispresleyhistory/a/suspicious minds.htm (last visited May 2, 2012).  The song contains the following lyric: "We can't go on together with suspicious minds, and we can't build our dreams on suspicious minds." http://www.elyrics.net/read/e/elvis-presley-lyrics/suspicious-minds-lyrics.html        (last visited May 2, 2012).

As for Carnival's disclosure obligations, the Court sustains Carnival's objections based on the joint defense doctrine. As a codefendant with Mystic, Carnival is clearly entitled to rely on this well-established doctrine, which is sometimes known as the common interest doctrine. *See Fojtasek*, 262 F.R.D. at 656 ("the joint defense theory . . . extends work product protection to documents shared between entit[ies] who have a common interest in the outcome of litigation"). At the hearing and in her pre-hearing memorandum, Gentry took the position that the joint defense doctrine applies only to the attorney-client privilege, not to attorney work-product. Gentry has now modified her position, stating instead that the joint defense doctrine does not shield discovery absent a finding of work product. (See DE 50). This refinement is a correct statement of law, to be sure, but does not aid Gentry given the Court's finding that, excepting the six emails mentioned above, the defendants have duly invoked the work product protection. Accordingly, Carnival may rely on Mystic's work product assertion based on a joint defense theory.

**In sum, Mystic and Carnival's objections to requests 13, 14, 15 and 24 are sustained as to the first two documents listed in Mystic's privilege log and the first of the seven emails in the third document. Mystic and Carnival's objections are overruled as to the latter six emails, which they shall produce.[4]**

> **3.**   **Reports of Prior Incidents** (Mystic Interrogatories 19, 21 & Request for Production 48; Carnival Interrogatory 18 & Request for Production 48).

Gentry next seeks information regarding prior incidents of cruise ship passengers injured on excursions to Mystic's ride. Mystic advised that it has 25 incident reports

---

[4]   This ruling is without prejudice. Should Plaintiff later conclude that she has a substantial need for the materials and cannot obtain the functional equivalent without undue hardship, then she may seek relief (after complying with Local Rule 7.1's pre-filing conferral requirement).

dating from the beginning of the bobsled operation in 2008 until the date of Gentry's incident on June 21, 2010. (Exhibit A, Mystic's email to the Court on 05/02/2012). Gentry seeks the same information from Carnival regarding any of its passengers who were injured on the bobsled ride during the same time period.

Among other arguments, Mystic and Carnival have interposed a work product objection against disclosure of these reports. For the reasons stated above, this objection is sustained. **Mystic need not produce any incident reports based on its work product claim. Similarly, Carnival is not required to produce any incident reports based on the joint defense doctrine.**

**However, Carnival shall inform Gentry of the number of reports in its possession (as Mystic has already done) and each Defendant shall list (i) the general nature of each incident and (ii) how many people were injured. This shall be in the form of a sworn summary.**

**Additionally, Defendants shall answer the interrogatories but may limit their responses to prior incidents, dating back three years before Gentry's injury, which relate to: seatbelt use or failure, the bumpiness of the track, the wetness of the track, joining of cars, holding onto handlebars, defective brakes or not utilizing brakes.**

4. **Maintenance Reports and Records** (Mystic Interrogatories 19, 20 & Request for Production 53, 55, 56).

Gentry also seeks information from Mystic regarding maintenance reports and records relating to the bobsled ride. Mystic argues that this request is overbroad because the ride is inspected on a daily basis and there are too many records.

**Mystic shall provide reports and information going back three years from the subject incident, but may limit its production to reports and records concerning**

9

major maintenance, replacement or repairs; that is, maintenance, repairs and inspections that are not conducted on a daily or routine basis.

   5.   **Advertising Materials** (Mystic Request for Production 19).

**Mystic shall produce any advertising or promotional materials that it made available to Carnival within one year prior to Gentry's injury.**

   6.   **Correspondence Prior to Incident** (Mystic Request for Production 25; Carnival Request for Production 25).

Gentry requests prior correspondence between Carnival and Mystic. Gentry claims that the correspondence will evidence the course of business between Carnival and Mystic and is therefore relevant to her joint venture claim. Defendants claim this would be unduly burdensome because of the frequency of communication on matters largely irrelevant to Gentry's claims (such as how many passengers will be attending each day's excursion).

**Defendants shall produce all correspondence relating to the (i) financing, (ii) design, and (iii) construction of the bobsled ride. Carnival shall also produce any performance evaluations of Mystic, which Carnival prepared itself.[5]**

   7.   **Inspections and Certificates of the Bobsled Ride** (Mystic Request for Production 28, 29).

**Mystic shall produce any inspection reports or certificates by government entities and regulators that relate to the bobsled ride.**

   8.   **Personnel Files** (Mystic Request for Production 33).

**Mystic shall produce the personnel files of the individuals who were working on the excursion on the day of the incident.[6] Mystic will redact the individuals'**

---

[5]   Carnival agreed to produce Mystic's application to become an official Carnival excursion operator within 10 days of the hearing.

social security numbers (or their Jamaican equivalent) and any health or medical information unless it relates to alcohol or substance abuse.

>    **9.**    **Manuals, Guides and Procedures** (Mystic Request for Production 42).

Mystic shall produce any manuals, guides, procedures, rules or standards from (i) the ride manufacturer, (ii) the company that installed the ride, or (iii) the industry in general.

>    **10.**    **Complaints Regarding Mystic** (Carnival Interrogatory 21 & Request for
>    Production 47).

Carnival's objections are overruled.   However, Carnival's answer to the interrogatory and request for production shall be limited to complaints regarding safety issues and relating to the bobsled ride itself.  (See Exhibit B, Carnival's email to the Court on 04/30/2012).

>    **11.**    **Other Requests**

Defendants have advised that they have no documents responsive to Mystic Request for Production 12, 30, 44 and Carnival Request for Production 31, 32.

**DONE AND ORDERED** in Chambers, in Miami, Florida, May 8th, 2012.

_____
Jonathan Goodman
United States Magistrate Judge

Copies furnished to:
All Counsel of Record

---

[6]    Mystic advised that it believed there were six or seven such individuals.